IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CORNING INCORPORATED, et al.,    :
                                 :
          Plaintiffs,            :
                                 :
     v.                          :    Civil Action No. 03-633-JJF
                                 :
SRU BIOSYSTEMS, et al.,          :
                                 :
          Defendants.            :

---

Richard L. Horwitz, Esquire, and David E. Moore, Esquire, of
POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.
Of Counsel: Kenneth E. Krosin, Esquire, Andrew E. Rawlins,
Esquire, Larry L. Shatzer, Esquire, and George C. Best, Esquire,
of FOLEY & LARDNER, Washington, D.C.
Attorneys for Plaintiffs.

Steven J. Balick, Esquire, and John G. Day, Esquire, of ASHBY &
GEDDES, Wilmington, Delaware.
Of Counsel: John J. McDonnell, Esquire, Daniel A. Boehnen,
Esquire, Matthew J. Sampson, Esquire, Richard A. Machonkin,
Esquire, Patrick G. Gattari, Esquire, of McDONNELL BOEHNEN
HULBERT & BERGHOFF LLP, Chicago, Illinois.
Attorneys for Defendants.

---

**MEMORANDUM OPINION**

March 7, 2006
Wilmington, Delaware

Farnan, District Judge.

This action was brought by Corning Incorporated and Artificial Sensing Instruments ASI AG (collectively "Corning") against SRU Biosystems, LLC, SRU Biosystems, Inc. and SRU Biosystems Holdings, LLC (collectively, "SRU") for infringement of U.S. Patent No. 4,815,843 (the "'843 patent"). By previously issued Memorandum Opinion and Order, the Court concluded that the '843 patent was valid and that SRU literally infringed and induced infringement of the '843 patent. The Court then permitted the parties to supplement the record as it pertained to the issue of inequitable conduct. Supplemental briefing has been completed and the following issues remain for the Court's consideration: (1) whether the '843 patent is unenforceable due to inequitable conduct, (2) if the '843 is unenforceable whether this is an exceptional case, and (3) whether Corning is entitled to a permanent injunction. This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law on the remaining issues.[1]

---

[1]     The factual background related to this litigation is set forth fully in the Court's November 15, 2005 Memorandum Opinion.

1

DISCUSSION

I.   **Whether The '843 Patent Is Unenforceable Due To Inequitable Conduct**

A.   Legal Standard

As a general matter, patent applicants and their patent attorneys have a duty of candor, good faith and honesty in their dealings with the PTO.  37 C.F.R. § 1.56(a).  The duty of candor, good faith and honesty includes the duty to submit truthful information and the duty to disclose to the PTO information known to the patent applicants or their attorneys which is material to the examination of the patent application.  Elk Corp. of Dallas v. GAF Bldg. Materials Corp., 168 F.3d 28, 30 (Fed. Cir. 1999).  Breach of the duty of candor, good faith and honesty may constitute inequitable conduct.  Id.  If it is established that a patent applicant engaged in inequitable conduct before the PTO, the entire patent application so procured is rendered unenforceable.  Kingsdown Medical Consultants v. Hollister Incorporated, 863 F.2d 867, 877 (Fed. Cir. 1988).

To establish inequitable conduct due to the failure to disclose material information or the submission of false information, the party raising the issue must prove by clear and convincing evidence that (1) the information is material; (2) the knowledge of this information and its materiality is chargeable to the patent applicant; and (3) the applicant's submission of false information or its failure to disclose this information

2

resulted from an intent to mislead the PTO.  Id.  Information is
deemed material if there is a substantial likelihood that a
reasonable Examiner would have considered the material important
in deciding whether to issue the application as a patent.  See
Elk Corp., 168 F.3d at 31; Mobil Oil Corp. v. Advanced
Environmental Recycling Technologies, Inc., 869 F. Supp. 251, 254
(D. Del. 1994).  Accordingly, a reference does not have to be
prior art to be material information that must be disclosed to
the PTO.  See 37 C.F.R. § 1.56; Mobil Oil Corp., 869 F. Supp. at
255.  Further, "an otherwise material reference need not be
disclosed if it is merely cumulative of or less material than
other references already disclosed."  Elk Corp., 168 F.3d at 31.

     Intent to deceive is rarely established by direct evidence,
and therefore, may be inferred from the facts and circumstances
surrounding the applicant's overall conduct.  See Molins PLC v.
Textron, Inc., 48 F.3d 1172, 1180 (Fed. Cir. 1995).  In
determining whether the applicant's overall conduct evidences an
intent to deceive the PTO, the Federal Circuit has emphasized
that the challenged "conduct must be sufficient to require a
finding of deceitful intent in the light of all the
circumstances."  Kingsdown Medical Consultants, 863 F.2d at 873.
Once materiality and intent have been established, the court must
conduct a balancing test to determine "whether the scales tilt to
a conclusion that 'inequitable conduct' occurred."  Critikon,

Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253,
1256 (Fed. Cir. 1997).  Generally, the more material the
omission, the less the degree of intent that must be shown to
reach a conclusion of inequitable conduct.  Elk Corp., 168 F.3d
at 32.

The question of whether inequitable conduct occurred is
equitable in nature.  As such, the ultimate question of whether
inequitable conduct occurred is committed to the sound discretion
of the trial court.  Elk Corp., 168 F.3d at 30-31; Kingsdown
Medical Consultants, 863 F.2d at 876.

B.   The Parties' Contentions

SRU contends that the '843 patent is unenforceable as a
result of inequitable conduct by Dr. Tiefenthaler and Mr.
Markarian during the prosecution of the patent before the PTO.[2]

_____

    [2]   In their original post-trial submissions, SRU does not
specifically identify who is being charged with inequitable
conduct.  Rather, SRU refers to the inequitable conduct of "the
applicants."  Relying on Federal Circuit case law, SRU describes
the applicants as the patentee and the attorney who prosecuted
the patent application.  The Court concludes that allegations
against "the applicants" are too general to withstand scrutiny
under Federal Rule of Civil Procedure 9(b).  See e.g. FMC Corp.
v. Hennessy Indus., Inc., 836 F.2d 521, 525, n.5 (Fed. Cir. 1987)
("[o]ne attempting to prove inequitable conduct must prove by
clear and convincing evidence that the conduct of the person
charged was inequitable") (emphasis added); Sun Microsystems,
Inc. v. Datram Corp., 1997 WL 50272 (N.D. Cal. Feb. 4, 1997);
Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 41
U.S.P.Q.2d 1770, 1775 (N.D. Cal. 1996) (requiring defendants to
"'state the time, place and specific content of the false
representation as well as the identities of the parties to the
misrepresentation'") (quoting Schreiber Dist. Co. v. Serv-Well
Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).  Rather, the

4

Specifically, SRU contends that Dr. Tiefenthaler and Mr. Markarian amended the claims to recite a "chemo-respons[ive] layer . . . [that] has a thickness of less than one wavelength" in order to overcome the objection of the Patent Examiner and distinguish their claims from the prior art.  SRU contends that Dr. Tiefenthaler and Mr. Markarian intentionally deceived the PTO by falsely representing to the PTO in the Response To Office Action Mailed October 23, 1987 (the "Response"), that none of the cited prior art included this limitation.  SRU contends that this misrepresentation was deliberate and material, and therefore the '843 patent is invalid as a result of inequitable conduct.

In response, Corning contends that, read in context, the statements made in the Response to the Patent Examiner's objection contain no misrepresentations.  Corning contends that, in any event, the prior art cited by the patent applicants was

_____

Court must be able to discern the identity of the person charged with inequitable conduct.
        SRU originally contended that "the natural inference" from Dr. Tiefenthaler's testimony was that the patent attorney who signed the Response was responsible for its falsification.  D.I. 282 at 61.  Based on this statement, it appeared to the Court that SRU was charging Mr. Markarian with inequitable conduct.  However, SRU has now taken the deposition testimony of Mr. Markarian, and in its supplemental post-trial submissions, SRU directs its allegations of inequitable conduct back to Dr. Tiefenthaler, alleging that Mr. Markarian must have acted at the direction of "someone like" Dr. Tiefenthaler.  D.I. 301 at 9.  Accordingly, for purposes of adjudicating the inequitable conduct issue at this juncture, the Court will assume that Plaintiff is charging both Dr. Tiefenthaler and Mr. Markarian with inequitable conduct, and therefore, the Court will examine the allegations as they pertain to these two individuals.

before the Patent Examiner, and the Patent Examiner is presumed
to have read and understood this art such that he would not be
misled as to its meaning.  Corning also contends that any alleged
misrepresentations were not material, and therefore, SRU cannot
establish that the '843 patent is unenforceable.

      C.   Analysis

     Reviewing the record and both the original and supplemental
submissions related to this issue, the Court concludes that
Corning has not established by clear and convincing evidence that
the '843 patent is unenforceable due to inequitable conduct.  As
a threshold matter, the Court agrees with Corning that SRU has
not proven that the statement highlighted by SRU in the Response
is, in fact, a misrepresentation.  Mr. Markarian, the attorney
prosecuting the application, filed the Response adding new claims
which included a limitation regarding the thickness of the chemo-
responsive layer.  PTX-2 at 117-126.  Mr. Markarian stated in the
Response that "the cited references do not disclose a chemo-
responsive layer having a thickness less than one wavelength."
Id. at 123.  Mr. Markarian then continued with a detailed
discussion of the Tiefenthaler paper, the only reference
discussed by the Patent Examiner in the body of the October 23,
1987 Office Action rejecting the claims.  After discussing the
Tiefenthaler paper, Mr. Markarian then turned his attention to
the remaining prior art, which was attached to the Office Action

on a Form PTO-892, by stating:

> The <u>remaining art listed in the Official Action</u> and made of record have been carefully considered, but are not felt to be as relevant <u>as the above discussed references</u> and certainly, neither alone nor in combination, disclose or suggest applicants' device.

<u>Id.</u> at 126 (emphasis added).

SRU contends that the Sutherland reference which is listed on the Form PTO-892 discloses a chemo-responsive layer having a thickness of less than one wavelength, and therefore, Mr. Markarian's statement in the Response that "the cited references do not disclose a chemo-responsive layer having a thickness less than one wavelength thick" is a material misrepresentation of the prior art.  The Court disagrees with SRU's reading of the Response.  Based on the above highlighted text, it is apparent to the Court that Mr. Markarian addressed the remaining art on the Form PTO-892 separately and distinctly from the Tiefenthaler paper which was the central focus of both the initial Office Action and the subsequent Response.  SRU contends that the use of the plural term "references" instead of the singular "reference" demonstrates that Mr. Markarian could not have been speaking solely about the Tiefenthaler paper when he said that "the cited references do not disclose a chemo-responsive layer having a thickness less than one wavelength."  However, it is also apparent from the highlighted text above that Mr. Markarian referred to the Tiefenthaler paper using the plural term "references."  The use of the plural term is not inconsistent

7

with the fact that the Tiefenthaler paper is a single reference, because in the Office Action, numerous citations to the Tiefenthaler paper were made.  Hence, it would not be inconceivable to the Court that Mr. Markarian would use the term "references" in the plural, to refer to those multiple citations. Thus, the Court cannot conclude, as SRU suggests, that Mr. Markarian's statements were clearly directed to the Sutherland reference, and therefore, the Court is not persuaded, as a threshold matter, that SRU has established, by clear and convincing evidence, a misrepresentation upon which to base a finding of inequitable conduct.

Nevertheless, even if the Court were to conclude that a misrepresentation was made, the Court is not persuaded that it was made with an intent to deceive the PTO.  Mr. Markarian testified that he would not have intentionally deceived the PTO, and SRU has not presented the Court with evidence undermining Mr. Markarian's contention.  SRU contends that Mr. Markarian could not have come up with the content of the Response on his own, and therefore, "the content of the Response must have come from someone familiar with the technology, someone like Dr. Tiefenthaler."  D.I. 301 at 9.  SRU contends that Dr. Tiefenthaler tried to "blame" Mr. Markarian at trial for the content of the Response and that this "finger-pointing" suggests that Dr. Tiefenthaler had something to hide.  SRU further states

8

that "Dr. Tiefenthaler must have been involved in the prosecution of the '843 patent, as he was the inventor and also the founder and only employee of ASI."  Id. at 6.

In the Court's view, SRU's argument is nothing more than unsupported, rank speculation.  First, the Court does not read Dr. Tiefenthaler's trial testimony to suggest any finger-pointing with respect to the statement forming the basis of SRU's inequitable conduct charge.  Rather, in discussing his "unhappiness" with the Response, Dr. Tiefenthaler was referring to an entirely separate part of the Response utilizing the term "binding layer" instead of "immobilized layer," which was the term preferred by Dr. Tiefenthaler.  Tr. 1068:9-22.  Further, SRU has no evidence to support its conjecture that Dr. Tiefenthaler must have participated in the Response.  In 1988, the same year the Response was filed, ASI was formed with venture capital money from Oerlikon-Buhrle Holding AG company, and the '843 patent issued with Oerlikon-Buhrle Holding AG listed as the assignee.  Tr. 1035:7-20; PTX-1 at 3.  However, SRU never pursued any discovery to determine what, if any, role that this company or any other persons or entitles played in the prosecution of the '843 patent.  Further, Dr. Tiefenthaler credibly testified at trial that he did not see the Response until after the issuance of the '843 patent.  Tr. 1068:9-22.

SRU contends that is was not permitted to question Dr. Tiefenthaler regarding his degree of participation in the Response because the Court sustained Corning's objection to this line of questioning.  However, the record indicates that SRU sought to raise this issue for the first time on redirect examination.  Tr. 1069:19-1070:6.  Thus, it was SRU's failure to pursue this line of questioning during SRU's deposition and direct examination testimony of Dr. Tiefenthaler that precluded it from exploring this issue and not any erroneous trial rulings by the Court.  Indeed, SRU bears the burden of proving that Dr. Tiefenthaler engaged in inequitable conduct, and SRU has offered no evidence demonstrating what degree of participation, if any, Dr. Tiefenthaler had in the preparation of the Response.

SRU also tries to establish Dr. Tiefenthaler's participation through circumstantial evidence by contending that Mr. Markarian testified that he was a conduit that carried out the instructions of his clients and that Mr. Markarian did not have an understanding of the technology or the patent that would have enabled him to formulate the response on his own.  In the Court's view, SRU's argument mischaracterizes and overstates Mr. Markarian's trial testimony.  Mr. Markarian testified in generalities that he typically received input from a law firm or inventor when preparing a response to an office action; however, SRU failed to elicit from Mr. Markarian the level of detail of

any such input.  Markarian Dep. Tr. 43:3-11.  Mr. Markarian also
testified that he did not recall having a practice that uniformly
applied in every patent case, and he could not recall getting any
specific instructions from a client or representative of a client
for the application that issued as the '843 patent.  Markarian
Dep. Tr. 54:17-55:4.  In addition, the fact that Mr. Markarian
did not understand the technology of the Sutherland reference in
the time given to him at his deposition by SRU's counsel and over
sixteen years after his involvement with the '843 patent does
note establish that Mr. Markarian would have been unable to draft
the Response on his own at the time it was filed.  Markarian Dep.
Tr. 52:4-11, 50:7-52:11.

Further, SRU has offered no evidence demonstrating that
either Dr. Tiefenthaler or Mr. Markarian were aware that the
Sutherland article disclosed a chemo-responsive layer having a
thickness less than one wavelength.[3]  SRU refers to the trial
testimony of Corning's expert Dr. Pollock regarding the
Sutherland reference; however, Dr. Pollock's trial testimony is
not evidence of what Dr. Tiefenthaler or Mr. Markarian knew or
were aware of when the Response was prepared.  Further, the fact
that SRU and its expert, Dr. Buckman, did not realize that the
Sutherland article disclosed a chemo-responsive layer having a

---

[3]     SRU also failed to ask Dr. Tiefenthaler any questions
regarding his intent in dealing with the PTO.

11

thickness of less than one wavelength until it was pointed out to them by Dr. Pollock, contradicts SRU's contention that Dr. Tiefenthaler must have known that the Sutherland reference disclosed this type of layer.[4]  See e.g., Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., 96 F. Supp. 2d 1006, 1016 (N.D. Cal. 2000) (finding no intent to deceive by party charged with inequitable conduct even though he understood and believed the arguments he made to the patent examiner at the time, because "the claimed import of th[e] sentence was not readily apparent even to the trained reader" as evidenced by fact that defendant's expert did not realize that the prior art in question contained the disclosure until well into the litigation when the attorneys brought it to his attention).

In sum, the Court concludes that SRU has failed to establish inequitable conduct by clear and convincing evidence.  SRU has offered speculation and conjecture regarding alleged inequitable conduct and has failed to bolster that speculation with any concrete evidence.  Having failed to establish inequitable conduct, the Court need not consider whether this case is

---

[4]     Dr. Pollock submitted a Rebuttal Expert Report of Dr. Clifford R. Pollock on Validity on May 5, 2004.  SRU represented to the Court that Dr. Pollock's report and subsequent deposition revealed to it the facts that form the basis for its inequitable conduct allegation.  D.I. 140 at 1.  This suggests to the Court, as Corning contends, that the full import of the Sutherland reference was not even identified by SRU or its expert until it was pointed out to them by Dr. Pollock.

exceptional within the meaning of 35 U.S.C. § 285.  Accordingly,
the Court will enter judgment in favor of Corning and against SRU
on its claim of inequitable conduct.

## II.   Whether Corning Is Entitled To A Permanent Injunction

Pursuant to 35 U.S.C. § 283, the Court has discretion to
grant injunctive relief.  However, once infringing activity has
been proven, an injunction should issue, unless there is
sufficient reason to deny it.  W.L. Gore & Associates, Inc. v.
Garlock, Inc., 842 F .2d 1275, 1281 (Fed. Cir.1988).

In this case, SRU contends that an injunction is
inappropriate because Corning cannot establish significant harm.
Specifically, SRU contends that it objected at trial to the
evidence of monetary loss presented by Corning, because that
evidence was not disclosed to SRU.  SRU also points out that it
presented an objection to this evidence in its Motion in Limine
No. 7 and renewed its objection post-trial.

The Court has previously overruled SRU's post-trial
objection and its related Motion in Limine concluding that this
evidence was properly admitted during the trial.  SRU has not
offered any other reasons why an injunction should not issue
given the Court's conclusions that SRU has literally infringed
and induced infringement of the '843 patent and SRU has not
proven that the '843 patent is invalid and unenforceable.
Accordingly, the Court concludes that injunctive relief is

appropriately awarded to Corning.  Within ten days of the date of
this Memorandum Opinion and accompanying Order, Corning shall
submit, with notice to SRU, a proposed injunction and final
judgment order for the Court to enter.

## CONCLUSION

For the reasons discussed, the Court concludes that SRU has
not established by clear and convincing evidence that Corning
committed inequitable conduct during the prosecution of '843
patent.  Accordingly, the Court concludes that the '843 patent is
not unenforceable.  In addition, the Court concludes that Corning
is entitled to a permanent injunction, and therefore, Corning
shall submit to the Court, with notice to SRU, a proposed form of
Order for both injunctive relief and final judgment within ten
days of the date of this Memorandum Opinion and accompanying
Order.

An appropriate Order will be entered.

14